UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| TRUDY BARTUSKA,<br><br>        Plaintiff,<br><br>        v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the Social<br>Security Administration,<br><br>        Defendant. | Case No. CV 04-8967 AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

### Administrative Proceedings

The parties are familiar with the procedural facts, which are undisputed and are summarized in the Joint Stipulation. [See JS 2-3]. In a written hearing decision dated February 26, 2004, Administrative Law Judge Eric Benham (the "ALJ") found that plaintiff had osteoarthritis of the fingers, mild carpal tunnel syndrome, and a history of wrist tendonitis that were severe, but that she retained the residual functional capacity ("RFC") to perform light work with only occasional gross or fine manipulation and occasional crawling. [Administrative Record

("AR") 23].[1]  After determining that plaintiff's RFC did not preclude performance of her past relevant work as a customer service representative, the ALJ concluded that plaintiff was not disabled on or before December 31, 2000, the date her disability insured status expired. [AR 20, 23-24]. The Appeals Council denied plaintiff's request for review of that decision. [AR 7-9].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  Substantial evidence is more than a mere scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas, 278 F.3d at 954.  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954.  The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

## Discussion

**The medical opinion evidence**

Plaintiff contends that the "record taken as a whole would support a more restrictive RFC than found by the ALJ," and that the ALJ erred in not specifically rejecting the hand limitations imposed by Dr. Nelson, an orthopedist who treated plaintiff and prepared reports

---

[1] After the ALJ conducted an initial hearing and issued a written decision denying benefits in 2001 [AR 39-67, 107-119], the Appeals Council remanded the case to the ALJ for further proceedings. [AR 154-156].  The ALJ conducted a second hearing in December 2003 [AR 68-94] and issued the February 2004 decision at issue in this case. [AR 19-24].  Plaintiff was represented by counsel during both hearings. [AR 39, 68].

for purposes of her workers' compensation claim.

In a "permanent and stationary" report dated December 4, 1996, Dr. Nelson opined that plaintiff exhibited objective factors of disability in her left hand consisting of a healed incision in the wrist and trigger fingers and grip loss and in her right hand consisting of decreased grip strength, healed incision, tenderness over the left dorsal compartment, positive Finkelstein's test, and De Quervain's disease.[2] [AR 566]. Dr. Nelson opined that subjective factors of disability affecting the left hand consisted of intermittent slight left wrist pain, becoming moderate with very heavy lifting and repetitive gripping and grasping. Subjective factors of disability for the right hand consisted of frequent slight wrist pain and hand pain, becoming moderate with heavy lifting, gripping, grasping, pushing, pulling and finger dexterity activities.[3] [AR 565]. Dr. Nelson also opined that plaintiff had a cervical spine impairment that would preclude heavy lifting, repetitive side-to-side motions of the neck and holding her head in one position for prolonged periods. [AR 566].

Dr. Nelson opined that plaintiff could not return to her former work because it required the repetitive use of her hands and wrists for typing on a keyboard. [AR 566]. In supplemental reports, Dr. Nelson's assessment of plaintiff's functional capacity remained unchanged. [AR 547-548, 550-551, 554-557, 559-560].

Dr. Robboy, who like Dr. Nelson was a treating orthopedist, opined that plaintiff cannot "perform occupations requiring prolonged or repetitive power gripping or grasping with either hand, heavy lifting with either hand, and prolonged or repetitive dexterous movements with

---

[2] A positive Finkelstein's test is significant for De Quervain's disease, which denotes tenosynovitis, or inflammation of the tendons of the first dorsal compartment of the wrist. See Dan J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook 3d § 11:2 (2004).

[3] California workers' compensation regulations define "slight" pain as pain that "could be tolerated, but would cause some handicap in the performance of the activity precipitating the pain," while "moderate" is pain that could be tolerated, but would cause marked handicap in the performance of the activity precipitating the pain. Cal. Code Regs. tit. 8, § 9727.

1  either hand." [AR 468; see AR 449-471].   Dr. Maze, the Commissioner's consultative
2  neurologist, opined that plaintiff is not limited in reaching and can occasionally engage in
3  handling (gross manipulation) and fingering (fine manipulation).[4] [AR 650].

4       A physician's opinion with respect to the existence of an impairment or the ultimate issue
5  of disability is not binding on the Commissioner.  Tonapetyan v. Halter, 242 F.3d 1144, 1148
6  (9th Cir. 2001). Where the opinion of a treating or examining physician is uncontroverted, the
7  ALJ must provide clear and convincing reasons, supported by substantial evidence in the record,
8  for rejecting it. If contradicted by that of another doctor, a treating or examining source opinion
9  may be rejected for specific and legitimate reasons that are based on substantial evidence in the
10 record. Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004);
11 Tonapetyan, 242 F.3d at 1148-49.  Standing alone, the opinion of a non-examining medical
12 expert does not constitute a specific, legitimate reason for rejecting a treating or examining
13 physician's opinion, but it may constitute substantial evidence when it is consistent with other
14 independent evidence in the record. Tonapetyan, 242 F.3d 1148.

15       The ALJ limited plaintiff to occasional gross and fine manipulation with the hands.  In
16 support of her contention that the ALJ erroneously rejected Dr. Nelson's hand limitations,
17 plaintiff argues that

18       defendant misinterprets the limitations imposed by Dr. Nelson.  Dr. Nelson never

---

[4] Under the Commissioner's policy guidelines, manipulative impairments are impairments in reaching, handling, fingering, and feeling. See SSR 96-8p,1996 WL 374184, at *6; SSR 85-15, 1985 WL 56857, at *2, *7. These manipulative activities

> require progressively finer usage of the upper extremities to perform work-related activities. Reaching (extending the hands and arms in any direction) and handling (seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands) are activities required in almost all jobs...."Fingering" involves picking, pinching, or otherwise working primarily with the fingers. It is needed to perform most unskilled sedentary jobs and to perform certain skilled and semiskilled jobs at all levels of exertion.

SSR 85-15, 1985 WL 56857, at *7.

4

>       opined that [plaintiff] could not use her hands to some extent.  Furthermore, Dr.
>       Nelson's opinions concerning [plaintiff's] hand limitation are consistent with
>       those of Dr. Robboy. Specifically, Dr. Nelson and Dr. Robboy (as well as Dr.
>       Maze) were of the opinion that [plaintiff] was limited to occasional gripping and
>       grasping.  Dr. Nelson's opinions that plaintiff could not engage in finger dexterity
>       movements also are consistent with Dr. Robboy's opinion that [plaintiff] could
>       not engage in any keyboarding.... [T]hese limitations would preclude [plaintiff's]
>       ability to perform her past relevant work.

[JS 10; see also JS 4].   Thus, plaintiff acknowledges that Drs. Nelson, Robboy, and Maze opined that she could  perform occasional gripping and grasping (which are gross manipulative activities) without reaching limitations.  That leaves the question whether the ALJ erred in finding that plaintiff could perform occasional fine manipulation, including keyboarding. Because Dr. Nelson opined that plaintiff was precluded from performing "finger dexterity activities" with the right hand but not the left, the only genuine dispute concerns Dr. Nelson's opinion about plaintiff's right-hand limitations.

The ALJ said that he did "not fully accept" Dr. Nelson's opinion. [AR 21].  Unlike Dr. Nelson, the ALJ found that plaintiff did not have a severe cervical spine impairment, and that there was no support in the record for the cervical spine limitations that Dr. Nelson imposed. Dr. Nelson commented that plaintiff had a "significant upper extremity problem with pain up into the neck"due to "long term continuous trauma" which "has resulted in surgery on her wrists and trigger finger releases." [AR 565-566].  Plaintiff does not challenge the ALJ's finding that she had no severe cervical spine impairment.  Because Dr. Nelson indicated that plaintiff's upper extremity and cervical spine impairments were related and resulted from "continuous trauma," the ALJ's finding that plaintiff did not have a severe cervical spine impairment is a valid reason for discounting Dr. Nelson's functional assessment.

In addition, the ALJ noted that within about a year of plaintiff's alleged onset date, her grip strength and hand condition had improved with treatment to the point that Dr. Nelson recommended vocational rehabilitation, that is, he concluded that she could still work, even

5

if he believed she could not return to her past job. [AR 565]. Although Dr. Nelson later concluded that plaintiff was unable to complete a vocational rehabilitation program, that was not a medical judgment based on any medical signs or symptoms, but on his receipt and review of a report indicating that plaintiff had failed to complete a vocational rehabilitation program. [See AR 551, 560].

The ALJ also rejected Dr. Nelson's opinion in reliance on the less restrictive October 1998 functional assessment by Dr. Robboy, another treating orthopedist. [See AR 21, 449-471]. While Dr. Nelson measured plaintiff's grip strength in December 1996 at 45 pounds maximum on the left and 40 pounds maximum on the right, her grip strength had improved significantly to a maximum of 65 pounds on the left and 60 pounds on the right when measured by Dr. Robboy in October 1998. [AR 21, 453]. According to Dr. Nelson's report, estimated normal grip strength for plaintiff would be 57.3 pounds on the left and 62.2 pounds on the right, so her grip strength reading in October 1998 was above normal on the left and just slightly below normal on the right. [See AR 453, 565]. Objective factors of disability were x-ray findings of osteoarthritis in the fingers, positive right Finkelstein's test, and swelling of the finger joints in the right ring and index fingers and left index and long fingers. [AR 468]. Dr. Robboy opined that plaintiff was precluded from heavy lifting, prolonged or repetitive power gripping or grasping, and prolonged or repetitive dexterous motions with either hand. He recommended that plaintiff not engage in keyboarding, even though his opinion expressly prohibits only "prolonged or repetitive" fine movements. [AR 468].

The ALJ pointed out that after rendering their opinions, Dr. Nelson and Dr. Robboy reviewed two "sub rosa" investigative films taken in March 1998 and October 1998, respectively. [AR 22-23, 121, 447-448, 547-549]. Dr. Nelson concluded that the films did not warrant a change in his previous opinion. [AR 548]. Dr. Robboy indicated otherwise. He said that those films showed plaintiff "engaging in a number of activities involving repetitive power gripping and grasping *and fine manipulation* with both hands. Of particular import is the fact that [plaintiff] exhibits no inhibition in performing these activities, and has no expression of pain." [AR 448 (emphasis added)]. He observed that the films

> conceivably ... were taken at a time when she was asymptomatic. Nonetheless, one would think that in a patient who had intermittent episodes of pain in her hands she would be extremely careful in performing the types of activities demonstrated in the films. These films certainly contradict Dr. Nelson's report of September 17, 1998, in which he agreed with the vocational rehabilitation evaluator who felt [that plaintiff] was not capable of performing <u>any</u> type of vocational rehabilitation.
>
> These tapes may also have a bearing on [plaintiff's] work capacity as stated in the report of October 13, 1998, and ultimately on her [qualified injured worker] status and need for vocational rehabilitation.

[AR 448]. Thus, Dr. Robboy concluded that the films contradicted, or at the very least undermined the basis for, the conclusions expressed in his October 1998 opinion.

The ALJ noted that two consultative examining physicians, Dr. Maze, a neurologist, and Dr. Yashruti, an orthopedist, opined that plaintiff could perform at least occasional gross or fine manipulation. [AR 21-22, 605-614, 643-652]. Dr. Cable, the non-examining medical expert, testified that plaintiff had osteoarthritis of the fingers beginning in the mid 1990s, for which she was taking anti-inflammatory medication; a history of mild carpal tunnel syndrome, treated surgically in 1995 without complication; a history of trigger finger release surgery in 1995; and tendinitis of the wrists from 1993 onward. [AR 76]. Dr. Cable testified that plaintiff's impairments did not meet or equal a listed impairment. [AR 76]. He opined that it was reasonable to posit some limitation in plaintiff's ability to type or write, but that she could do those activities, or other fingering and grasping activities, frequently. [AR 80]. The ALJ did not fully accept his assessment either, but instead weighed the medical opinions and concluded that plaintiff could perform occasional gross and fine manipulation.

The ALJ articulated specific, legitimate reasons based on substantial evidence for rejecting Dr. Nelson's controverted opinion that plaintiff had an impairment in her right hand that precluded her from even occasional fine manipulation, and his finding that plaintiff can perform occasional gross and fine manipulation is supported by substantial evidence. At the

second administrative hearing, a vocational testified that the Dictionary of Occupational Titles ("DOT") classifies plaintiff's past relevant work as a customer service representative in the utilities industry (DOT job number 241.267-034) as light work requiring only occasional use of the upper extremities for reaching, handling, and fingering  [AR 88-89, 91-92].  That testimony provides substantial evidence for his finding that plaintiff's RFC does not preclude performance of her past relevant work.

**Subjective complaints**

Plaintiff contends that the ALJ failed to set forth legally sufficient reasons for rejecting her subjective complaints.

Plaintiff testified that she had pain, discomfort and swelling in her fingers and wrists, pain in her shoulders, arm and neck, and inability to turn her head completely in either direction. [AR 84].  She said she was clumsy, often dropped things, and could not hold or grab things without pain.  [AR 84].  She testified that she lived alone, cared for her own personal hygiene, cooked and cleaned for herself (albeit "very little"), took care of her two cats, drove a car, attended church three times a week (at the time of first hearing), attended a class once a week (at the time of the second hearing), visited friends who lived 17 miles away, went to the store, pet store, and post office, and read about an hour a day. [AR 48-49, 52, 63-64, 85-86]. During the second hearing plaintiff testified that she had been ordering groceries from an online grocery delivery service, but she also said that she could not type, and then she said that she made out short grocery lists by hand.  [AR 86].  Plaintiff testified that although her "carpal [tunnel] only hurts in the right wrist a little bit and just twinges," her fingers "hurt a lot," and that although she could perform activities involving fine manual dexterity, she generally did so with discomfort and slowly. [AR 48-49, 85-87].

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of her subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain

and other symptoms are evaluated).  Although the ALJ may then disregard the subjective testimony he considers not credible, he must provide specific, convincing reasons for doing so. Tonapetyan, 242 F.3d at 1148; see also Moisa, 367 F.3d at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the subjective testimony of claimant without providing "clear and convincing reasons").  The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885.  If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ articulated clear and convincing reasons for rejecting the alleged severity of plaintiff's complaints.  First, he concluded that her complaints were out of proportion to the objective findings.  This is not, as plaintiff asserts, an impermissible reason.  See Osenbrock v. Apfel, 240 F.3d 1157, 1166(9th Cir. 2001)(holding that the ALJ permissibly discredited the claimant's subjective complaints where the objective evidence did not corroborate the severity of the alleged symptoms, and the treating doctor released the claimant for return to "light duty work" despite the claimant's allegations of severe pain and limitation); Bunnell, 947 F.2d at 345 (stating that the absence of medical findings to support the degree of severity alleged "is just one factor to be considered in evaluating the credibility of the testimony and complaints").

Second, the ALJ observed that plaintiff testified that she lived alone and carried on activities of daily living without significant limitations. [AR 22].  Although plaintiff testified that her fingers hurt, she also acknowledged that her symptoms did not preclude her from conducting a variety of routine activities.  While a claimant's daily activities may not be transferable to the work setting, see Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001), the ALJ is not prohibited from considering this factor as part of the credibility determination. See  Thomas, 278 F.3d at 953 (holding that the ALJ did not err in finding that the claimant's ability to live alone and perform chores such as cooking, laundry, washing dishes, and shopping undermined the credibility of her subjective complaints).

Third, the ALJ pointed to Dr. Robboy's descriptions of the physical activities recorded on the investigative films taken of plaintiff in March and October 1998 and to the impact viewing those films had on Dr. Robboy's assessment of the credibility of plaintiff's pain complaints and her functional restrictions. See Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("The ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.").

Fourth, the ALJ noted that plaintiff had not received any medical treatment for more than five years before the date of his decision, and that she also said that she did not take pain medication. [AR 23]. Plaintiff testified that her insurance had lapsed in January 1999, before her date last insured, and that she had not obtained treatment since then. She said that she had no problems managing her diabetes, which was diagnosed when she was 14, and that she had never looked into obtaining treatment from a county clinic. [AR 49, 85, 87]. She said she refrained from taking prescription anti-inflammatory medications because she could not afford them, and also because she did not want to take them without being under a doctor's care due to possible complications with her liver or diabetes. [AR 84-85, 219]. The medical expert, however, testified that he saw no evidence that non-steroidal anti-inflammatory medications were contraindicated due to the risk of liver disease or diabetes complications. [AR 78-79]. The ALJ permissibly inferred that if plaintiff's pain and symptoms had been of disabling severity, she would have been motivated to attempt to obtain treatment and pain relief commensurate with her complaints. See Burch v. Barnhart, 400 F.3d 676, 681(9th Cir. 2005)(holding that the ALJ did not err in discrediting the claimant's pain testimony where she did not seek treatment for a period of four months, and observing that where the claimant's pain was "not severe enough to motivate her to seek" consistent treatment, that "is powerful evidence regarding the extent to which she was in pain"); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998) (holding that plaintiff's allegations of disabling pain were contradicted by her daily activities, by her statements that her pain was "intermittent" and alleviated by a

nonprescription medication, and by the lack of ongoing treatment); <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1434 (9th Cir. 1995) (holding that the ALJ properly discounted subjective back complaints in view of a three-year gap in treatment and treating physician's reliance on conservative treatment).

For these reasons, the ALJ's credibility finding was supported by the record and free of legal error.

## Conclusion

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and reflects application of the proper legal standards. Accordingly, defendant's decision is **affirmed.**

**IT IS SO ORDERED.**

DATED: January 19, 2006

                                                   /s/
                                    ANDREW J. WISTRICH
                                    United States Magistrate Judge